1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DAVID W. RIGGINS a/k/a DAWUD
HALISI MALIK,

                              Plaintiff,

        v.

DAN PACHOLKE, TAMMY GWIN, C.
WHALEY, V. JOHANSEN, STEVE
RAMSEY, GREG JONES, and JOHN
SCOTT,

                              Defendants.

No. C10-5147 BHS/KLS

**REPORT AND RECOMMENDATION**
**Noted for:  February 4, 2011**

Before the court is the motion for partial summary judgment of Plaintiff David W. Riggins a/k/a Dawud Halisi Malik.  ECF No. 45.  The motions to strike discovery responses and to compel discovery contained within Plaintiff's partial summary judgment motion were addressed under separate Order.

Having carefully reviewed the motion, Defendants' response (ECF No. 48), Plaintiff's reply (ECF No. 49), and balance of the record, the undersigned recommends that Plaintiff's motion for partial summary judgment be denied.

## BACKGROUND SUMMARY

In December 2007, Plaintiff was found guilty of attempting to introduce marijuana into the Stafford Creek Corrections Center (SCCC).  He was sanctioned with 30 days in segregation

REPORT AND RECOMMENDATION - 1

and loss of 270 days good time.  Plaintiff unsuccessfully appealed the guilty finding through the prison disciplinary process.  He then filed a personal restraint petition and the Washington Court of Appeals found that Plaintiff had not been afforded the required minimal procedural due process during the infraction hearing.  The matter was remanded to the Department of Corrections (DOC) for a new hearing.  On rehearing, the infraction was dismissed.  Plaintiff lost no good time.

Plaintiff sues several DOC employees involved in his disciplinary action, claiming that they denied him due process and equal protection in violation of the Fifth and Fourteenth Amendments by filing a fabricated infraction report, withholding evidence during the disciplinary hearing, and placing him on intensive management status for six months.  ECF No. 11.

Plaintiff claims that he is entitled to partial summary judgment on his claim that Defendants violated the due process clause of the Fourteenth Amendment because it is undisputed that he was "in Intensive Management Status from December 20, 2007, until July 28, 2008,"[1] and his infraction was dismissed.  ECF No. 45, p. 4.

## STANDARDS OF REVIEW

### A.    Summary Judgment Standard

Summary judgment will be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and of identifying those positions of the pleadings and discovery responses that

---

[1] Plaintiff refers to six months on intensive management status and also refers to a period from December 20, 2007 until July 28, 2007.   The court has assumed that he is referring to the same period of intensive management status.

REPORT AND RECOMMENDATION - 2

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Calderone v. United States*, 788 F.2d 254, 259 (6th Cir. 1986). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

If the moving party meets its initial burden, the opposing party must then set forth specific facts showing that there is some genuine issue for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, 477 U.S. 242, 250, 106 S. Ct. 2502, 91 L.Ed.2d 202 (1986). "A plaintiff's belief that a defendant acted from an unlawful motive, without evidence supporting that belief, is no more than speculation or unfounded accusation about whether the defendant really did act from an unlawful motive." *Carmen v. San Francisco Unified School Dist.*, 237 F.3d 1026, 1028 (9th Cir. 2001).

**B.     42 U.S.C. § 1983**

To state a claim under 42 U.S.C. § 1983, at least two elements must be met: (1) the defendant must be a person acting under color of state law, and (2) his conduct must have deprived the plaintiff of rights, privileges, or immunities secured by the constitution or laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). Implicit in the second element is a third element of causation. *See Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 286-87, (1977); *Flores v. Pierce*, 617 F.2d 1386, 1390-91 (9th Cir. 1980), *cert. denied*, 449 U.S. 975 (1980). When a plaintiff fails to allege or establish one of the three elements, his complaint must be dismissed. The Civil Rights Act, 42 U.S.C. § 1983, is not merely a "font of tort law."

REPORT AND RECOMMENDATION - 3

1   *Parratt*, 451 U.S. at 532.  That plaintiff may have suffered harm, even if due to another's

2   negligent conduct, does not in itself necessarily demonstrate an abridgement of constitutional

3   protections.  *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986).

4                                    **DISCUSSION**

5   **A.      Denial of Due Process During Disciplinary Hearing**

6           In his complaint, Plaintiff alleges that he was denied due process and equal protection to

7   a fair and impartial hearing when false and fabricated statements were submitted against him and

8   he was denied access to witness information.  *See, e.g.,* ECF No. 11, p. 7.  In support of this

9   claim, Plaintiff relies on *Heck v. Humphrey*¸ 512 U.S. 477, 114 S. Ct. 2364, 129 L.Ed.2d 383

10  (1974).  He argues that he has achieved all of the criteria set forth in *Heck* because he was

11  successful in having his infraction sanction reversed and dismissed.  ECF No. 49, pp. 5-6.  While

12  *Heck* answers the question of when a plaintiff may bring a Section 1983 action, it does not

13  answer the question of whether the alleged wrongful imposition of disciplinary sanctions on an

14  inmate violates a constitutionally protected liberty interest.   Indeed, prisoners have "no

15  constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which

16  may result in the deprivation of a protected liberty interest," but they do have "the right not to be

17  deprived of a protected liberty interest without due process of law."  *Freeman v. Rideout,* 808

18  F.2d 949, 951 (2 nd Cir. 1986).

19          The procedural protections afforded by the Due Process Clause adhere only when the

20  disciplinary action implicates a protected liberty interest in some "unexpected manner" or

21  imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents

22  of prison life."  *Sandin v. Connor*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L.Ed.2d 418 (1995).

23  Rather than invoking a single standard for determining whether a prison hardship is atypical and

REPORT AND RECOMMENDATION - 4

significant, courts rely on a condition or combination of conditions or factors that requires case by case, fact by fact consideration.  *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003) (citing *Keenan v. Hall*, 83 F.3d 1083, 1089 (9th Cir.1996), amended 135 F.3d 1318 (1998)), cert. denied, 543 U.S. 825 (2004).  Courts are to look to three guideposts by which to frame the inquiry: (1) whether the challenged condition mirrored those conditions imposed upon inmates in administrative segregation and protective custody; (2) the duration of the condition, and the degree of restraint imposed; and (3) whether the state's action will invariably affect the duration of the prisoner's sentence.  *Serrano*, 345 F.3d at 1078 (citations omitted).

In a prison disciplinary hearing the concept of due process exists because an inmate has a liberty interest in having good time or earned time credited against his sentence.  Once that good time or earned time has been credited against the sentence, the sentence has been shortened. The inmate has a liberty interest in being released on the earlier date.  See, *Wolff v. McDonnell*, 418 U.S. 539 (1974).  Thus, good time that has been credited against a sentence cannot be taken away without affording due process.  However, once the good time is restored, there is no further liberty interest to which to concept of due process applies.

In this case, it appears that Plaintiff did not lose his good time and the only sanction imposed on him was thirty days of administrative segregation.  Thus, the threshold inquiry for the court is whether Plaintiff's confinement for thirty days in administrative segregation implicates a protected liberty interest.  The placement of a prisoner in isolation or segregation as a result of disciplinary proceedings is subject to *Wolff*'s procedural protections if (1) state statutes or regulations narrowly restrict the power of prison officials to impose the deprivation, and (2) the liberty in question is one of "real substance."  *Sandin*, 515 U.S. at 477-87.  Typically, placement in segregated housing in and of itself does not implicate a protected liberty interest.

REPORT AND RECOMMENDATION - 5

1   *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir.2003).  Mere allegations by a prisoner that he

2   was denied due process in connection with the decision to administratively segregate him do not

3   present a constitutionally cognizable claim, absent a showing that the specific deprivation at play

4   meets the "real substance" test.  See, e.g., *May v. Baldwin*, 109 F.3d 557, 565 (9th Cir.1997).

5           Placement in segregation falls within the terms of confinement ordinarily contemplated

6   when a prison sentence is imposed, see *Toussaint v. McCarthy*, 801 F.2d 1080, 1091-92 (9th

7   Cir.1986), and so "comported with the prison's discretionary authority."   In addition, the

8   analysis used in *Sandin* indicates that an "atypical" deprivation may be defined by the conditions

9   of the inmate's confinement as well as the length of that confinement.  See, e.g., *Sandin*, 115

10  S.Ct. at 2301.   In *Sandin*, the Court held that an inmate's disciplinary placement in segregated

11  confinement was not atypical because the conditions of his confinement mirrored those imposed

12  upon inmates in administrative segregation and protective custody, and the length of his

13  placement (30 days) "did not work a major disruption in [inmate's] environment".  *Id.*

14          Plaintiff has provided no factual basis or evidence upon which the court may make a

15  determination, for purpose of this summary judgment motion, that Plaintiff had a legally

16  protected liberty interest to be free from placement in administrative segregation.  In a prison

17  setting, liberty interests are "generally limited to freedom from restraint which, while not

18  exceeding the sentence in such an unexpected manner as to give rise to protection by the Due

19  Process Clause of its own force, nonetheless imposes atypical and significant hardship on the

20  inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484.  Plaintiff has

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 6

1    not provided evidence that his placement in segregation was beyond the prison officials'

2    discretion to impose or that the liberty in question was one of "real substance."[2]

3    **B.      Denial of Due Process – Placement on Intensive Management Status**

4            Similarly, Plaintiff has produced no evidence upon which the court may make a

5    determination, for purpose of this summary judgment motion, that his reclassification to

6    intensive management and being placed in intensive management units from December 20, 2007

7    until July 28, 2008 violated a protected liberty interest.  As noted above, in order to be entitled to

8    relief for a due process violation, there must be a "protected liberty interest" at issue.  In general,

9    an offender has no constitutional right to a particular classification or custody level.  *Sandin*, 515

10   U.S. at 476; s*ee also In re Galvez*, 79 Wn. App. 655, 657, 904 P.2d 790 (1995).  Inmates in

11   Washington do not have a protected liberty interest in maintaining favorable custody

12   classifications.  *In re Dowell*, 100 Wn.2d 770, 772-775, 674 P.2d 666 (1984); *see also Meachum*

13   *v. Fario*, 427 U.S. 215, 225, 96 S. Ct. 2532, 49 L. Ed. 2d 451 (19876) (transfer from general

14   population to maximum security is "within the normal limits or range of custody which the

15   conviction has authorized the State to impose," even when the conditions in maximum security

16   are "substantially more burdensome").

17           Plaintiff makes only the vague and conclusory statement that he was subjected to

18   "extreme and harsh conditions of constant noise; lights being on 24-7; sleep deprivation, and

19   being cold most of the time because of cold air constantly blowing out of the vents," during his

---

[2] Moreover, "[t]he Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison." *Wolff*, 418 U.S. at 556-57.  Thus, a plaintiff's ineligibility for earned early release time credits is a consequence of a discretionary decision to place him in isolation.  The collateral consequence, that a plaintiff is unable to earn early release time credits while in isolation, does not convert his placement in isolation into a protected liberty interest.

REPORT AND RECOMMENDATION - 7

1   stay in "various 'Intensive Management Units'".  ECF No. 45, pp. 4-5.  However, he provides no

2   factual basis for these claims and provides no admissible evidence to support his contentions.

3   **C.     Personal Participation**

4           Plaintiff has also not established a factual basis for a claim against any of the individual

5   Defendants.  In order to maintain a cause of action under 42 U.S.C. § 1983, a plaintiff must show

6   (i) that he suffered a violation of rights protected by the Constitution or created by federal

7   statute, and (ii) that the violation was proximately caused by a person acting under color of state

8   law.  *Haygood v. Younger*, 769 F.2d 1350, 1354 (9th Cir. 1985)(en banc), cert. denied 478 U.S.

9   1020, 106 S. Ct. 3333, 92 L. Ed. 2d 739(1986).  To satisfy the second prong, plaintiff must allege

10  facts showing how individually named defendants caused or personally participated in causing

11  the harm alleged in the complaint.  *See Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981).

12  Thus, assuming that Plaintiff can establish the existence of a constitutionally protected liberty

13  interest, he must still establish that the individually named Defendants proximately caused a

14  deprivation of that liberty interest.  He has not yet done so and therefore, is not entitled to partial

15  summary judgment as a matter of law.

16                                    **CONCLUSION**

17          The undersigned recommends that Plaintiff's motion for partial summary judgment (ECF

18  No. 45) be **DENIED.**

19          Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil

20  Procedure, the parties shall have fourteen (14) days from service of this Report to file written

21  objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those

22  objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985).  Accommodating the

REPORT AND RECOMMENDATION - 8

1   time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on

2   **February 4, 2011**, as noted in the caption.

3

4          DATED this 18th day of January, 2011.

5

6

7          Karen L. Strombom
           United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 9